**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CENTEX HOMES,** | ) CV F 07-00568 AWI SMS |
| Plaintiff, | ) |
| | ) **ORDER ON DEFENDANT** |
| v. | ) **NICKY RODRIGUEZ** |
| | ) **CEMENT COMPANY'S** |
| **FINANCIAL PACIFIC INSURANCE** | ) **MOTION FOR SUMMARY** |
| **COMPANY, NICKY RODRIGUEZ** | ) **JUDGMENT OR SUMMARY** |
| **CEMENT, and NICKY RODRIGUEZ,** | ) **ADJUDICATION** |
| | ) |
| Defendants. | ) Doc. # 53 |

This is an action in diversity by plaintiff Centex Homes ("Centex") against Financial Pacific Insurance Company (the "insurance company Defendant") and against individual defendant Nicky Rodriguez and Nicky Rodriguez Cement (collectively "Rodriguez"), a concrete fabrication subcontractor. This action is one of four related cases filed in this court that arise out of alleged construction defects in a number of residential development projects in the San Joaquin Valley. This case and related case number 07cv0567 name separate concrete fabrication subcontractors who are alleged to have provided defective concrete work resulting in a number of construction defect lawsuits against Plaintiff. This action and the related actions seek express indemnification, damages and declaratory relief. In the instant action, the named subcontractor-defendant, Rodriguez, seeks summary adjudication as to liability relating to construction defects on homes that were substantially completed 10 years or more before the filing of the instant action. Rodrigez also seeks summary adjudication of

claims arising out of the construction agreement for the "Northpointe" on the ground Centex lacks standing to assert such claims. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Venue is proper in this court.

## PROCEDURAL HISTORY

Centex's complaint was filed on April 12, 2007, and alleges a total of six claims for relief. The first, fourth and fifth claims for relief are alleged against the insurance company Defendant and are not the subject of the instant motion. Centex's second claim for relief is against Rodriguez for breach of contract, the third claim is against Rodriguez for express indemnity, and the sixth claim for relief is against Rodriguez for declaratory relief. On May 30, 2007, this case was related to cases numbered 07cv0567, 07cv0569, and 07cv0570. This case was reassigned to this court on June 6, 2007. The instant motion for summary adjudication was filed on July 21, 2009. Centex's opposition was filed on September 4, 2009, and Rodriguez's reply was filed on September 14, 2009. The hearing date of September 21, 2009, was vacated and the matter was taken under submission as of that date.

## UNDISPUTED MATERIAL FACTS

Unlike the motion for summary judgment in companion case # 07cv0567, the subcontractor-defendant in this case asserts two separate grounds for summary adjudication. The first ground, which is common to the motions for summary adjudication in both cases, is that the limitations period imposed by section 337.15 of the California Code of Civil Procedure bars Centex's damage claims that arise from construction defects in homes that were substantially completed more than 10 years before the date of this action. The second ground, which is unique to this motion for summary adjudication, contends that Centex was not a party to the construction contract on one of two developments at issue in this action (the Northpointe subdivision) and so lacks standing to bring an action for damages arising out of that contract.

With regard to Ropdriguez's first ground – that certain of Centex's claims are time barred by a 10-year statute of limitations – there is little dispute as to the material facts of the case. Centex is a general partnership organized under the laws of Nevada with a principal

place of business in Texas.  Nicky Rodriguez is an individual and Nicky Rodriguez Cement is a sole proprietorship with a principal place of business in Porterville, California. Rodriguez entered into a contract or contracts with Centex to provide construction work and services for the "Orchard Ridge" subdivisions project located in the San Joaquin Valley. While Rodriguez does not dispute that it was a party to a construction contract for the project called "Northpointe," Rodriguez contends that Centex was not a party and so lacks standing with respect to claims arising under that contract.  Centex alleges that Centex Real Estate Corporation, a Nevada Corporation is the entity that signed the Northpointe Contract with Rodriguez and that Centex is successor in interest to Centex Real Estate by operation of law, and is thus the real party in interest with regard to claims arising out of that contract.

There is no dispute that alleged construction defects involving the foundations and concrete work on homes in the subdivisions gave rise to a number of construction defect lawsuits (the "underlying suits").  The complaint alleges defense in the underlying suits was tendered to Rodriguez and the insurance company Defendant but neither participated in the defense of the underlying suits or indemnified Centex for costs of settlement of the underlying suits.

Rodriguez alleges that Centex's claims "relate to work Rodriguez allegedly performed at the subdivision projects mentioned in [Centex's] Complaint."  Doc. # 71 at ¶ 4.  Rodriguez disputes the proffered fact in that they contend that Centex's claims are not limited to work and services performed at the subdivisions, but also include claims for failure to provide insurance and failure to provide a defense in the underlying construction defect lawsuits.  Id.

Rodriguez alleges Centex's complaint claims damages that include costs incurred to defend underlying homeowner lawsuits in specified cases and damages that include costs to "inspect repair and/or settle homes on which Rodriguez allegedly worked," and damages arising from "the alleged failure of Rodriguez to obtain additional insured endorsements allegedly required to be procured by Rodriguez pursuant to the construction agreements for the projects [that are the] subject of [Centex's] Complaint."   Doc. # 71 at ¶¶ 5, 6, 7.  The parties agree the underlying homeowner lawsuits that are the basis for Centex's claims for

1  failure to defend and indemnify were construction defect lawsuits.

2      Rodriguez alleges several facts concerning the underlying construction defect lawsuits
3  that are not disputed. Essentially the parties do not dispute that close of escrow dates for
4  each home listed in Rodriguez's moving papers occurred after substantial construction on the
5  home had been completed. Rodriguez lists a number of homes located in the subject
6  subdivision projects that were the subject of construction defect lawsuits and where the close
7  of escrow dates were more than 10 years prior to the date of filing of this action; that is,
8  where escrow closed prior to April 12, 1997. The list is set forth at paragraph 13 of
9  Rodriguez's proffered listed of undisputed facts and includes approximately 82 addresses.
10 Rodriguez alleges and Centex does not dispute that Centex did not cross-complain against
11 Rodriguez in any of the underlying construction defect lawsuits.

## LEGAL STANDARD

13     Summary judgment is appropriate when it is demonstrated that there exists no
14 genuine issue as to any material fact, and that the moving party is entitled to judgment as a
15 matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);
16 Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755
17 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d
18 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

22 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary
23 judgment always has the initial responsibility of informing the court of the basis for its
24 motion, the nature of the responsibility varies "depending on whether the legal issues are
25 ones on which the movant or the non-movant would bear the burden of proof at trial."
26 Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not
27 have the ultimate burden of persuasion at trial – usually but not always the defendant – "has
28 both the initial burden of production and the ultimate burden of persuasion on the motion for

1  summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d
2  1099, 1102 (9th Cir. 2000). "In order to Rodriguezy its burden of production, the moving
3  party must either produce evidence negating an essential element of the nonmoving party's
4  claim or defense or show that the nonmoving party does not have enough evidence of an
5  essential element to Rodriguezy its ultimate burden of persuasion at trial." Id.

     If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

     In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

5

Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

**I. Applicability of Time Limits Pursuant To Cal. Code Civ. Pro. § 337.15**

In the instant motion for summary adjudication, Rodriguez seeks what is essentially declaratory judgment on the issue of whether Centex's claims for damages incurred in settlement or defense of the underlying suits pertaining to homes where escrow closed more than ten years before the commencement of this action are time-barred. Rodriguez's sole contention in support of its motion for partial summary judgment is that Centex's action is barred by the ten-year limitations period provided by section 337.15 of the California Code of Civil Procedure. Section 337.15 provides as follows in pertinent part:

> (a) No action may be brought to recover damages from any person, or the surety of any person, who develops real property or performs . . . construction of an improvement to real property more than 10 years after the substantial completion of the development or improvements for any of the following:
>
> (1) any latent deficiency in the design, specifications, surveying, planning, supervision, or observation of construction or construction of an improvement to or survey of, real property.
>
> (2) Injury to property, real or personal, arising out of any such latent deficiency.

>      (b) As used in this section, "latent deficiency" means a deficiency which is not apparent by reasonable inspection.
>
>      (c) As used in this section, "action" includes an action for indemnity brought against a persona arising out of that person's performance or furnishing services, or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section . . . .

Cal. Code Civ. Pro. § 337.15.[1]

The policy purpose behind section 337.15 is to prevent builders' capital resources from being tied up to cover "long tailed" liability for construction defects that occur long after the completion of construction. See Martinez v. Traubner, 32 Cal.3d 755, 760 (1982) ("the purpose of section 337.15 has been stated as 'to protect developers of real estate against liability extending indefinitely into the future'"). The limitations period for patent construction defects – that is, defects that are discernable by reasonable inspection is three or four years, depending on whether the claim is contract based or tort based. The ten-year limitation for latent construction defects forms the maximum limitations period for recovery for any construction defect. See Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003) (actions for a latent construction defect must be filed within three or four years of discovery of the defect but in any event must be filed within ten years of substantial completion regardless of when the defect was discovered).

There is no question that the claims arising from construction defects in the homes listed in Rodriguez's motion for summary judgment represent claims for construction defects that are time barred by the terms of section 337.15 *if* Centex's claims fall within the scope of construction defect claims subject to the 10-year limitation period of section 337.15. Centex contends that summary adjudication is not authorized in this case because Centex's claims against Rodriguez include, in addition to barred claims, claims for three categories of damages that are not barred by section 337.15. Specifically, Centex contends

---

[1] References to section numbers hereinafter are to sections of the California Code of Civil Procedure unless otherwise specified.

that:

  1. Centex's claim for indemnity for settlement of claims for personal injury are not time-barred;

  2. Centex's claim for Rodriguez's "breach of a separate promise in the parties' contract for [Rodriguez] to insure Centex under [Rodriguez's] insurance policies is not barred, and;

  3. Centex's claim for Rodriguez's "breach of separate promise in the parties' contracts for [Rodriguez] to defend Centex against the underlying homeowner lawsuits, regardless of whether those lawsuits have merit" is not time-barred.

  4. Rodriguez, in order to invoke the time limits set for the by § 337.15, must prove the requirements of that section; in particular, Rodriguez must prove the construction defects involved were "latent" defects. Centex alleges Rodriguez has failed to produce proof that he construction defects were "latent."

Doc. # 70 at 6:5-9. The court will consider each of Centex's contentions in order.

### *A. Personal Injury Claims*

There is no question that personal injury or wrongful death actions arising from construction defects are not barred by the 10-year limitations period of section 337.15. Martinez, 32 Cal.3d at 760-761. What is in dispute is whether Centex's complaint alleges indemnity for claims of personal injury arising from Rodriguez's alleged construction defects. An inspection of the complaint reveals no mention at all of facts that might suggest that Centex incurred costs for the settlement of claims for homeowner personal injury in the underlying homeowner suits. Centex, in its opposition to Rodriguez's motion points out that the complaints in the underlying homeowner lawsuits alleged, *inter alia* physical injury. See Centex's Statement of Disputed Facts, Doc. # 62 at ¶ 1. Centex further alleges that when it settled the homeowner claims, the settlement amounts included a component of compensation to secure waivers of liability for current or future personal injury claims. Doc. # 62 at ¶ 2. Centex alleges that the "settlements with homeowners did not segregate amounts or percentages of the settlements that were based on the resolution of personal

8

injury claims." Doc. # 62 at ¶ 3.

Centex's contentions with regard to personal injury claims have two problems. First, Centex's allegation that it is entitled to indemnity for losses it incurred to settle homeowner claims for personal injury constitutes a theory of recovery not pled in the complaint, but pled for the first time in Centex's opposition to Rodriguez's motion. While a party may recover on a theory not expressly pleaded in the complaint but proven at trial, the opposing party must have fair notice. Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 714 (8th Cir. 1979). However, "'[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.' [Citation.]" Speer v. Rand McNally & Co., 123 F.3d 658, 665 (7th Cir. 1997); Oakland Raiders v. Nat'l Football League, 131 Cal.App.4th 621, 648 (6th Dist. 2005). The court concludes that Centex's assertion of a claim for indemnification for personal injury for the first time in its opposition to Rodriguez's motion for summary judgment fails to accord adequate notice to Rodriguez and may not be considered by the court.

The court need not consider whether Centex should be allowed to amend the complaint because no motion to amend is before the court. However, should Centex seek to amend, the second problem with Centex's claim arises. Centex has made no allegations of fact from which it can be shown or inferred that Centex paid to settle personal injury claims in the underlying homeowners' suits. Centex's own allegations, combined with the documents submitted in support of Centex's opposition to Rodriguez's motion show, at most, that Centex paid homeowners to receive a general comprehensive release from liability arising from construction defects that included release from potential liability for personal injury or emotional distress. Notwithstanding the allegations of personal injury in the complaints in the underlying homeowner complaints, there is absolutely no evidence alleged or presented to indicate that Centex paid any claims for actual, as opposed to potential, physical injury.

Centex's allegation that the settlement costs for personal injury claims in the underlying homeowner suits were "indivisible" from the settlement amount paid for global,

comprehensive release from construction defect liability raises serious doubts as to whether Centex can advance a theory of recovery that can produce a claim for damages that is sufficiently definite. Rodriguez's motion challenges the sufficiency of Centex's proof of the amount paid for actual physical injury. As Rodriguez points out, Centex responds to the challenge by merely asserting that the claim for indemnification for personal injury claims gives rise to an "ambiguity" that requires a determination by the finder of fact. The court finds no ambiguity. Absent a proffer of evidence that a means exists by which claims for actual physical injury could be calculated, Centex's claim for damages for Rodriguez's alleged failure to indemnify is purely conjectural. To survive summary judgment the plaintiff must provide some basis for determination of a claim for damages. See Hutcherson v. Alexander, 264 Cal.App.2d 126, 135, (1968) ("It is well-established under California law that while the fact of damages must be clearly shown, the amount need not be proved with the same degree of certainty, so long as the court makes a reasonable approximation"). Although the issue is not presently before the court, Centex is notified that the court will not be inclined to permit amendment of Centex's complaint unless Centex can show that the amount Centex paid to settle claims for actual physical damages can be calculated to a reasonable degree of approximation.

### B. Failure to Procure Additional Insured Endorsements

Subsection (c) of section 337.15 defines a "action" for purposes of this section as including "an action for indemnity brought against a person *arising out of* that person's performance or furnishing services, or materials referred to in this section . . . ." Section 337.15(c) (italics added). Centex's basic contention in opposition to the motion for summary judgment with respect to Rodriguez's alleged failure to obtain additional insured endorsements is that the duty to obtain the insurance endorsements is a contractual breach that is not within the scope of actions subject to the 10-year limitations period of section 337.15.

Based on this subsection, there is no question that section 337.15 applies to Centex's claims for direct indemnity against Rodriguez. The question presented by Rodriguez's

10

1  motion and Centex's opposition is whether Rodriguez's alleged failure to obtain additional
2  insured endorsements gives rise to damage claims that are severable from Centex's claims
3  for indemnity. The court concludes the claims are not severable.

Centex's complaint alleges:

> Among other obligations, the Subcontracts required [Rodriguez] to obtain [commercial general liability (CGL)] insurance having specified terms and limits, and to add Centex as an additional insured under each such policy. The terms specified in the Subcontracts for the CGL policies to be obtained by [Rodriguez] include, among others, products/completed operations coverage and *contractual liability endorsements covering [Rodriguez's] indemnity and defense obligations to Centex*. The Subcontracts specified that the CGL policies were, in no event, to contain any exclusion that conflicts with any coverage required by the Subcontracts. The Subcontracts also specified that the CGL coverage to be provided by [Rodriguez] would be primary to any coverage provided by other insurance carried by Centex.

Doc. # 2 at ¶35. (Italics added)

Based on Centex's complaint, the only discernable benefit accruing to Centex from the additional insurance endorsements is that they are a surety for the funding of Rodriguez's indemnity obligations to Centex. The measure of damages Centex could recover for a claim of contractual breach of duty to obtain the additional insured endorsements is precisely the same as the measure of Centex's direct indemnity claims. The court finds that Centex's claims with respect to the alleged failure of Rodriguez to obtain the additional insured endorsements is simply an effort by Centex to cloak its direct indemnity claims in other clothes hoping to avoid the time limitation of section 337.15. The court concludes that Centex's claims alleging Rodriguez's failure to obtain additional insured endorsements is time-barred by the provisions of section 337.15 to the same extent Centex's claims of entitlement to express indemnity would be.

There are two asides worth noting. First, the court notes that should Centex ultimately prevail, either by way of appeal or motion for reconsideration, on its contentions with respect to its action against Rodriguez for failure to obtain additional insured endorsements, Centex's claims may nonetheless be time-barred by the applicable statute of limitations for breach of contract. The court's decision here is limited to the issue of whether the time limits in section 337.15 apply; the court makes no determination as to any

other basis for the exclusion of Centex's claims of breach of contract.

Second, Centex's complaint appears factually inconsistent with respect to its allegations regarding the claim for failure to obtain additional insured endorsements. The court notes that at ¶ 16 of Centex's complaint Centex alleges that "Rodriguez provided Centex with certificates of insurance and endorsements identifying the policies issued by Insurers under which Centex is an additional insured . . . ." However, at ¶ 39, Centex alleges that Rodriguez failed "to proved CGL coverage as promised . . . ." Although the issue is not before the court at this time, the court notes that Centex's allegations appear inconsistent or at least appear to not provide sufficient notice as to what additional insured endorsements were promised and not provided. Again, the court's opinion here is limited to the issue presented and the court makes no determination as to the adequacy of Centex's pleadings generally.

### C. Duty to Defend

Centex relies on Crawford v. Weather Shield Mfg., Inc., 44 Cal.4th 541 (2008) ("Crawford") for the proposition that the to duty defend, when contractually established, is distinct from the duty to indemnify. In Crawford, the issue the court dealt with was whether the duty to defend in the non-insurance context arises separately from the duty to indemnify as is the case in the insurance context. See id. at 547 ("we address issues concerning the contractual duty to defend in a *noninsurance* context") (italics in original). The Crawford court concluded that, as in the insurance context, an indemnitor has the obligation, upon tender of defense, to defend "against all claims 'embraced by the indemnity,'" Id. at 557. Thus, Crawford stands for the proposition that an indemnitor's duty to defend "arises immediately upon a proper tender of defense by the indemnitee, and thus before the litigation to de defended has determined whether indemnity is actually owed." Id. at 558.

As Rodriguez notes, Crawford does not directly confront the issue of whether the time limit imposed by section 337.15 applies to claims for damages arising from failure to defend an underlying construction defect lawsuit. Neither party has offered any authority that directly supports or contravenes the proposition, nor has the court been able to find any

12

such authority. Nonetheless, <u>Crawford</u> does offer some helpful insight.

As to the damages that may accrue from a failure to defend, the <u>Crawford</u> court observed:

> The indemnitor's failure to assume the duty to defend the indemnitee upon request ([Cal. Civ. Code] § 2778, subd. 4) may give rise to damages in the form of reimbursement of defense costs the indemnitee was thereby forced to incur. But this duty is nonetheless distinct and separate from the contractual obligation to pay an indemnitee's defense costs, after the fact, as part of indemnity owed under the agreement.

<u>Id.</u> at 557 - 558. Thus, <u>Crawford</u> observes that there may exist some damages arising out of the failure to defend that are not compensable as indemnity and that are incurred independently of any judgment on the merits of the underlying construction defect lawsuit.

As previously stated, section 337.15 defines an "action" for purposes of application of the statute of limitations as including "an action for *indemnity* brought against a person *arising out of that person's performance or furnishing of services or materials referred to in this section*, . . . ." Unlike Centex's claims for damages arising out of the failure to provide additional insured endorsements, the claim for damages for failure to provide a defense is not an action for indemnification by another name. As <u>Crawford</u> suggests, the measurement for damages arising from a refusal to undertake a properly tendered defense is different from the measurement of damages that are compensable as indemnity following a judgment. In the present factual context, the foregoing passage from <u>Crawford</u> creates an ambiguity in that there is no suggestion what the exact nature of the damages arising from a failure to defend are envisioned to be. However, the potential existence of a class of damages that might not be within the scope of indemnity costs, combined with Centex's claim for damages arising from those costs, is sufficient to create an issue of material fact that will require resolution either by the finder of fact or by subsequent motion for summary judgment.

The court also notes that claims for damages arising from failure to defend are different from claims arising from construction defects not only with respect to the categories of losses that comprise the damage claims, but also with respect to the rules of

procedure that pertain to each.  While an indemnity claim accrues upon judgment of the underlying claim; a failure to defend claim accrues with the proper tender of defense and continues for the duration of proceedings in the underlying suit or until the indemnitor proves the impossibility of recovery on the underlying claim.  <u>GGIS Ins. Serv. v. Superior Court</u>, 168 Cal.App.4th 1493, 1505 (2nd Dist. 2009).  Tolling, which does not apply to claims for damages arising from construction defects, <u>Lantzy</u>, 31 Cal.4th at 383; does apply to claims for damages arising out of failure to defend from the time the defense is properly tendered until the action in the underlying case is concluded.  <u>Archdale v. American Int'l Specialty Lines Ins. Co.</u>, 154 Cal.App.4th 449, 478 (2nd Dist. 2007).

The damages that arise from a failure to defend arise from facts separate and apart from damages arising from construction defects, are measured by costs unrelated to construction defects, and are litigated according to rules that are separate from those that apply to construction defects.  The court therefore concludes that an action for damages arising from the failure to defend falls outside the scope of indemnity-related damages that are subject to the 10-year limitations period of section 337.15.  Again, this determination neither suggests nor implies any judgment with regard to the ultimate viability of Centex's claim for such damages.  Other bases may exist for summary judgment with respect to Centex's claims arising from failure to defend and other time limits may apply.  The court here concludes only that Centex's claims for damages arising out of Rodriguez's failure to defend in the underlying suits is not subject to the limitations period set forth in section 337.1

### D. Failure to Prove Construction Defects Were "Latent"

Centex's allegations with regard to Rodriguez's burden to show the construction defects were "latent" is somewhat puzzling.  Centex contends that Rodriguez has a "threshold" burden to show that the defects giving rise to Centex's claims for damages were "latent" defects.  The court disagrees.  Rodriguez's instant motion for summary adjudication challenges on the grounds that: (1) the damages Centex claims (at least as to Rodriguez) arise from construction defects, and (2) that the maximum limitations period for recovery of

14

damages arising from construction defects has passed. Thus, the threshold showing is that at least some portion of the damages claimed by Centex arise from construction defects. If, as the court has concluded, some portion of the damages claimed in the complaint arise from construction defects, then those defects must fall into one of two categories; either the defects are latent or patent. The limitations period for the former is the 10-year period imposed by section 337.15, and the limitations period for the latter is the 4-year period imposed by section 337.1. For claims arising from construction defects, one or the other limitations period must apply; there are no others. As the court has explained, for claims that arise from other than construction defects, such as claims for damages for failure to defend, other time limitations apply.

As the court previously noted, the ten-year limitation for latent construction defects forms the maximum limitations period for recovery for any construction defect. Lantzy, 31 Cal.4th at 370. Thus, the ten-year limitations is the default maximum limitations period for any claim that falls in the category of construction defect. Had Rodriguez intended to apply the lesser limitations period imposed by section 337.1, he would have been required to show that the defects in question were patent. However, in basing the motion for summary adjudication on the default maximum limitations period for construction defects, Rodriguez need only show that the time limits applicable to construction defects apply.

**II. Centex's Standing to Bring Claims Relating to the "Northpointe Project"**

Rodriguez contends that Centex homes was not a party to the contract under which Rodriguez performed work on the Northpointe subdivision and that Centex therefore lacks standing to bring claims arising from Rodriguez's alleged construction defects on that project. Rodriguez alleges that the contacting parties for the Northpointe subdivision were Rodriguez and "Centex Real Estate Corp., dba Centex/Mangano Homes" (hereinafter "Centex/Mangano"). Centex, in its opposition, alleges, first, that it is the real party in interest in this action because it (Centex) is the entity that paid to settle the underlying homeowner suits. Second, Centex alleges that Centex is the assignee of all rights and obligations previously belonging to Centex/Mangano thorough a sequence of four

15

intermediate entities that were each assigned all rights and obligations from their predecessor and made the assignments to a successor entity ending with Centex. Rodriguez, in its reply, appears to acknowledge that the rights and obligations arising from the contract between Rodriguez and Centex/Managano may be passed by assignment to Centex, but argues that Centex's complaint is deficient because the assignment is alleged for the first time in Centex's opposition to the motion for summary adjudication.

> A real party in interest is generally defined as the person possessing the right sued upon by reason of the substantive law. The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant. The real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain the cause of action. A real party in interest is the owner of the cause of action. For example, someone who is not a party to a contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party.

Windham at Carmel Mountain Ranch Ass'n v. Superior Court, 109 Cal.App.4th 1162, 1172 - 1173 (4th Dist. 2003) (internal citations and quotes omitted).

The right of an assignee to sue in its own name to vindicate a right assigned is deeply rooted in California law. See Quan Wye v. Chin Lin Hee, 123 Cal. 185, 186 (1898) (assignee is the party in interest within the meaning of section 367 of the California Code of Civil Procedure). Rodriguez does not dispute Centex's contention that Centex is the assignee of all rights and obligations originating in the contract between Rodriguez and Centex/Mangano and so is, in fact, a real party in interest. Rodriguez's contention is that Centex's complaint is insufficient because it does not allege the fact of the assignment. The court disagrees.

A complaint is sufficiently pled with respect to standing if the plaintiff alleges "'facts in his [complaint] that, if proven, would confer standing upon him.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir.2003)). "At a bare minimum, standing requires that Plaintiff 'show that [he] suffered an injury in fact, there was a causal connection between the injury and the conduct complained of, and the injury is likely to be redressed by a favorable decision.'" Davis v. Yageo Corp., 481 F.3d 661, 673 (9th Cir.2007) (citing Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

An inspection of the complaint shows that Centex alleged: (1) that they suffered injury in fact because they were required to pay to settle numerous lawsuits by homeowners claiming construction defects; (2) the injury complained of was caused by Rodriguez's defective construction practices; and (3) that Centex's injury would be redressed by an award of damages in the amount of what Centex paid to settle the claims and to defend itself from the suits. The court concludes Centex's complaint alleges facts that, if proven, will show standing. What the complaint does not allege is facts that explain the legal reason Centex had to pay to settle the claims in the underlying homeowner suits. However, the court concludes that pursuant to the above-cited authority, Centex was only required to allege the fact of the damages they incurred. The court has no basis from which it can conclude that Centex is obliged to allege the legal reason the damages were incurred by them and not some other entity.

The court concludes that Rodriguez has failed to show that Centex's complaint falls short of alleging the elements of standing. While Rodriguez might be able to challenge the legal basis of the homeowner claims against Centex arising from homeowner lawsuits from the Northpointe subdivision as a defense against Centex's claims, Rodriguez has not made the more difficult showing that Centex cannot litigate those claims in the first instance. The court finds that Rodriguez's contention that Centex lacks standing to bring claims for damages arising from work Rodriguez performed on the Northpointe subdivision is without merit.

## CONCLUSION AND ORDER

As noted at the outset, the resolution requested in the instant motion for summary adjudication is in the nature of a declaratory judgment. It is the court's understanding that Rodriguez does not seek summary judgment as to all of Centex's claims, but rather seeks to define to some extent the applicability of the limitations imposed by section 337.15 on the scope of recovery that can be had by Centex in its claims against Rodriguez. With this in mind, the court hereby declares as follows:

1.    1.    To the extent Centex asserts claims against Rodriguez for indemnity for costs arising from construction defects for houses where escrow closed prior to April 12, 1997, those claims are barred by the 10-year limitations period imposed by section 337.15.
2.    2.    To the extent Centex asserts claims against Rodriguez for contractual breach for failure to obtain additional ensured endorsements, those claims are barred by the 10-year limitations period imposed by section 337.15.
3.    3.    To the extent Centex seeks recovery against Rodriguez for indemnity for costs arising from physical injury resulting from construction defects, such recovery is not allowed because no claim for such recovery was properly pled.
4.    4.    To the extent Centex seeks damages for costs arising from Rodriguez's failure to defend properly tendered defenses in the underlying homeowner suits, such damages are not prevented by the 10-year limitations period imposed by section 337.15.
5.    5.    Centex has standing to bring the claims alleged in the complaint.
6.    6.    No other limitation on Centex's claims or on Rodriguez's defenses are expressed or implied by this order.
7.    7.    Centex's request for judicial notice, Doc. # 64, is granted as unopposed.

IT IS SO ORDERED.

**Dated:   January 7, 2010**                    /s/ Anthony W. Ishii
                                                           CHIEF UNITED STATES DISTRICT JUDGE